UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE,<br><br>         Plaintiff,<br><br>v.<br><br>AIRBNB, INC., ALBERTO GUISEPPE COPPOLA HERNANDEZ, and DOES 1 through 50,<br><br>         Defendants. | Case No.: 3:25-cv-1699-RSH-BLM<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[ECF No. 10] |

Pending before the Court is a motion to dismiss filed by defendant Airbnb, Inc. ("Airbnb"). ECF No. 10. As set forth below, the Court grants the motion.

## I. BACKGROUND

On July 2, 2025, Plaintiff filed this lawsuit in California Superior Court for the County of San Diego against Airbnb and Alberto Giuseppe Coppola Hernandez. ECF No. 1-2 ("Compl.").

The Complaint alleges as follows. For ten days during July 2024, Plaintiff rented a house in Cabo San Lucas, Baja California Sur, Mexico (the "Subject House") from Hernandez through Airbnb's website, during which time Hernandez secretly recorded Plaintiff using cameras hidden in the Subject House, including a camera hidden in the

bathroom. *Id.* ¶¶ 14, 23-24, 27, 34. After using the bathroom on several occasions, Plaintiff discovered a small hidden camera attached to the bathroom mirror. *Id.* ¶ 35. The camera captured "nude and partially nude" images of Plaintiff, and Plaintiff alleges on information and belief that Hernandez shared those images with others. *Id.* ¶ 24.

The Complaint describes Airbnb as "a company that provides an online platform offering properties for rent and brokering rentals between parties who wish to offer their properties for rent with parties who wish to rent the properties." *Id.* ¶ 16. The Complaint alleges that Airbnb represents that "the homes it lists meet safety and security standards." *Id.* ¶¶ 18-19. Airbnb "retains control to inspect homes that it lists." *Id.* ¶ 20. Airbnb collects fees from the rental payments. *Id.* ¶ 21.

The Complaint alleges that Airbnb "knew or should have known about the hidden camera installed in the bathroom because it was installed before Plaintiff rented the Subject House and was identifiable and detectable upon reasonable inspection." *Id.* ¶ 25. The Complaint also alleges upon information and belief that "complaints about similar incidents had been made to Airbnb about Defendant Hernandez, the Subject House, and other homes that Airbnb listed on its website before Plaintiff rented the Subject House." *Id.* ¶ 36.[1] Plaintiff also alleges more generally that Airbnb has received numerous complaints about cameras hidden on premises that it lists, and that Airbnb has "failed to take any action to prevent the known harmful acts and harassment at the homes it was renting to members of the public." *Id.* ¶ 38.

Plaintiff alleges that he reported the existence of the camera to Airbnb, that Airbnb said it would investigate, and that Airbnb thereafter "acknowledged the wrongful conduct." *Id.* ¶ 41. The Complaint alleges on information and belief that Airbnb "chose to later continue to rent properties" for Hernandez. *Id.*

---

[1] The Complaint does not provide any detail about these other complaints. Airbnb disputes this allegation and asserts that it is conclusory, false, and made in bad faith.

The Complaint brings claims for: (1) negligence, (2) invasion of privacy, (3) intentional infliction of emotional distress, (4) premises liability, (5) distribution of sexually explicit materials, (6) negligent infliction of emotional distress, and (7) sexual harassment. Compl. at 8-16. The fifth claim is brought against Hernandez only, and the other claims are brought against both Defendants. *Id.*

On July 3, 2025, Airbnb removed the action to this Court. ECF No. 1.

On September 29, 2025, Airbnb filed its motion to dismiss the claims against Airbnb. ECF No. 10. The motion has been fully briefed. ECF Nos. 13 (opposition), 17 (reply).

On October 3, 2025, Hernandez filed an Answer. ECF No. 11.

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum, a complaint must allege enough facts to provide "fair notice" of both the particular claims being asserted and "the grounds upon which [those claims] rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007).

In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court, however, need not accept all conclusory allegations as true. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. Judicial Notice

Airbnb has requested that the Court take judicial notice of Airbnb's Terms of Service (the "Terms") from Airbnb's website as of July 2024, on the grounds that these terms, which are available online, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See generally* ECF Nos. 10-2 (Airbnb's Request for Judicial Notice), 10-3 (Terms). Courts have taken judicial notice of the terms of service offered publicly by various online platforms. *See e.g.*, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1190-91 (S.D. Cal. 2024) (taking judicial notice of defendant's website privacy policy and other pages because "they appear on publicly available websites and their authenticity cannot be reasonably questioned"); *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) (taking judicial notice of past and present versions of Google's terms of service because "they are not the subject of reasonable dispute and their authenticity is not in question"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of Google's terms of service and policies because "[t]hese documents appear on publicly available websites and are thus proper subjects for judicial notice"); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1026 n.2 (N.D. Cal. 2021) (explaining that "[p]ublic terms of service and privacy policies are proper subjects of judicial notice" and granting request for judicial notice of Zoom's terms of service, and current and historical versions of its privacy statement). Plaintiff has not opposed the request. The Court therefore grants Airbnb's request and takes judicial notice of the Terms. *See* ECF No. 10-3. By doing so, the Court is not thereby opining on the legal effect of the disclosures or disclaimers contained in the Terms.

The Terms state, "As the provider of the Airbnb Platform, Airbnb does not own, control, offer, or manage any Listings or Host Services." Terms at 1. The Terms further

state that a host's "relationship with Airbnb is that of an independent individual or entity and not an employee, agent, joint venturer, or partner of Airbnb, except that Airbnb Payments acts as a payment collection agent as described in the Payments Terms," and that "Airbnb does not direct or control your Host Service." *Id.* § 4.3 ("Independence of Hosts").

The Terms state in bold text that Airbnb "do[es] not endorse or warrant the existence, conduct, performance, safety, quality, legality or suitability of any Guest, Host, Host Service, Listing or third party." *Id.* § 17. The terms additionally provide, also in bold, that guests assume the risk of using Airbnb to find a rental:

> You acknowledge that many activities carry inherent risks and agree that, to the maximum extent permitted by applicable law, you assume the entire risk arising out of your access to and use of the Airbnb Platform and any Content (as defined in Section 9), including your stay at any Accommodation, participation in any Experience, use of any other Host Service, or any other interaction you have with other Members whether in person or online. This means it is your responsibility to investigate a Host Service to determine whether it is suitable for you. For example, Host Services may carry risk of illness, bodily injury, disability, or death, and you freely and willfully assume those risks by choosing to participate in those Host Services.

*Id.* § 3.2 ("Your Assumption of Risk").

### B. Duty of Care (Claims One, Four, and Six)

Airbnb argues that Plaintiff's claims for negligence, negligent infliction of emotional distress, and premises liability fail because Plaintiff cannot establish that Airbnb owed a duty to Plaintiff. ECF No. 10-1 at 4.

To establish a claim for negligence under California law, "the plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (citation and internal quotation marks omitted). "Recovery for negligence depends as a threshold matter on the existence of a legal duty of care." *Id.* (citation omitted). This requirement of a duty owed applies not only to a claim for negligence, but also to claims articulated in terms of negligent infliction of emotional

distress or premises liability. *See Hall v. Rockcliff Realtors*, 215 Cal. App. 4th 1134, 1139 (Ct. App. 2013) ("The same concepts of duty applicable to general negligence claims apply to premises liability claims."); *Macy's Cal., Inc. v. Superior Ct.*, 41 Cal. App. 4th 744, 748 (Ct. App. 1995) ("[N]egligent infliction of emotional distress … is not an independent tort but the tort of negligence …. The traditional elements of duty, breach of duty, causation, and damages apply.") (internal quotation marks and citations omitted).

Under California law, it is "well established that, as a general matter, there is no duty to act to protect others from the conduct of third parties." *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005). Courts have recognized certain exceptions to the general no-duty-to-protect rule. *Id.* The Court turns to these.

### 1. *Misfeasance*

One exception is based on the distinction between "nonfeasance" and "misfeasance." *Brown*, 11 Cal. 5th at 214. In the latter situation, the law imposes a duty of care on a defendant "who has created a risk of harm to the plaintiff, including when the defendant is responsible for making the plaintiff's position worse." *Id.* (citing *Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th 703, 716 (2001)) (internal quotation marks omitted). For example, in *Lugtu*, the California Supreme Court held that "a law enforcement officer has a duty to exercise reasonable care for the safety of those persons whom the officer stops," 26 Cal. 4th at 718, such that the plaintiffs had a claim for negligence against a highway patrol officer based on injuries they sustained from being rear-ended by another vehicle while stopped by the officer in the highway median. The officer had a duty "not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct … of a third person." *Id.* at 716. Plaintiff argues that here, Airbnb exposed Plaintiff to an increased risk of a privacy violation by continuing to make the Subject House available for rent on Airbnb's marketplace, even though Airbnb allegedly knew or should have known that guests would be exposed to privacy violations by hidden cameras. ECF No. 13 at 11.

Airbnb argues that under California law, in order to establish a duty based on the defendant's misfeasance or creation of a risk, the injury-causing hazard must be a "necessary component" of the defendant's conduct. ECF No. 10-1 at 7 (citing *Melton v. Boustred*, 183 Cal. App. 4th 521, 535 (Ct. App. 2010)). Airbnb points to the decision in *Doe No. 1 v. Uber Technologies, Inc.*, 79 Cal. App. 5th 410 (Ct. App. 2022). In that case, the court held that Uber—like Airbnb, a service that matches participants to a market transaction—was not liable to the plaintiffs, three women who were abducted and sexually assaulted by assailants who posed as authorized drivers of the Uber ridesharing app. *Id.* at 414. The assailants were not affiliated with Uber, but had obtained Uber decals from the Uber website and affixed them to their vehicles. *Id.*

The plaintiffs in the *Uber* case offered several theories for holding Uber liable for the acts of third parties, including a theory of "misfeasance" as a basis for a duty to protect. *Id.* at 424. The plaintiffs alleged that Uber did not merely fail to protect or to warn them (nonfeasance), but rather "actively concealed the fake Uber scheme and instances of sexual assault reported to Uber; created a rideshare platform that encourages unsafe behavior, but marketed it as safe; offered a deficient matching system on the Uber app; and made Uber decals easy to obtain without keeping track of their use." *Id.* at 426.

After surveying relevant California decisions, the Court of Appeal rejected the plaintiffs' claim. The court explained as follows:

> The "crux of the difference between" misfeasance and nonfeasance for purposes of assessing a duty to protect is whether the third-party conduct "'was a necessary component' of the [defendant's] conduct at issue." [*Melton*, 183 Cal. App. 4th at 534.] That assault and rape by third parties is a foreseeable result of a defendant's actions, or that this conduct may not have occurred absent the defendant's actions, is insufficient to establish this.

*Uber Techs.*, 79 Cal. App. 5th at 427. The court continued:

> The fake Uber scheme may be a foreseeable result of the Uber business model, and the Jane Does' assailants may not have been able to as easily commit their crimes against the Jane Does, were it not for the Uber app

and the Uber business model. But these connections cannot establish that the harm the Jane Does suffered is a "necessary component" of the Uber entities' actions. [*Sakiyama v. AMF Bowling Centers, Inc.*, 110 Cal. App. 4th 398, 408 (Ct. App. 2003).] "The violence that harmed [the Jane Does]"—abduction and rape—"[is] not 'a necessary component' of" the Uber business model. [*See Melton, supra*, 183 Cal. App. 4th at 535.] Nor does such harm become a necessary component of the Uber business model because the Uber entities marketed the Uber app as safe to use, refused to cooperate with sexual assault investigations, or concealed sexual assaults related to the use of the app.

*Id.* The court was not persuaded by the plaintiffs' argument that the harm to them was foreseeable to Uber; the court stated that "it is only '[w]here there is a legal basis for imposing a duty—as in [the] cases of misfeasance or when a special relationship exists—[that] the court considers the foreseeability of risk from the third party conduct.'" *Id.* at 428 (quoting *Melton*, 183 Cal. App. 4th at 542).

Airbnb argues that the harm here—the invasion of Plaintiff's privacy resulting from the hidden camera that Hernandez placed in the Subject House—was not a "necessary component" of Airbnb's actions or business model; and that therefore, the misfeasance or making-the-plaintiff's-position-worse exception to the no-duty-to-protect rule does not apply here. Plaintiff's opposition brief does not respond to this argument, or address the decisions in *Uber Technologies* and *Melton* cited by Airbnb.[2] The Court agrees with Airbnb that under controlling California law, the misfeasance exception does not apply here.

---

[2] Plaintiff's brief does cite a decision that reached the opposite result from the case referred to above as *Uber Technologies*: the similarly named *Doe v. Uber Technologies, Inc.*, No. 19-cv-3310-JSC, 2020 WL 2097599, at *4 (N.D. Cal. May 1, 2020). In that case, the district court determined that the plaintiff "has plausibly alleged that Uber did something that put her in a worse position—namely, that it changed the transportation industry to encourage people (women in particular) to get into vehicles with strangers based on the presence of a decal in a car window and provided assurances about the safety of riding in these Uber decaled vehicles, but did not control the distribution of the decals." *Id.* at 3. The court concluded, "[t]hese allegations are sufficient to plausibly support an inference that Uber's actions created a foreseeable risk of harm to Plaintiff." *Id.* While this

### *2.   Special Relationship*

Another exception to the no-duty-to-protect rule exists where the defendant has a "special relationship" with either the victim or the person who created the harm. *Brown*, 11 Cal. 5th at 215. Plaintiff argues that Airbnb had a special relationship with Plaintiff: first, as Airbnb's customer; and second, as a tenant or guest, with Airbnb filling the role of a landlord, hotel, or property manager. ECF No. 13 at 11. The Court begins with the second set of theories.

"A landlord generally owes a tenant the duty, arising out of their special relationship, to take reasonable measures to secure areas under the landlord's control against foreseeable criminal acts of third parties." *Castaneda v. Osher*, 41 Cal. 4th 1205, 1213 (2007) (citing *Delgado*, 36 Cal. 4th at 235). Although a party lacks ownership of property, "[a] defendant's control over property is sufficient to create a duty to protect owed to persons using the property." *Colonial Van & Storage, Inc. v. Superior Ct.*, 76 Cal. App. 5th 487, 497 (Ct. App. 2022) (citation omitted). Thus, "defendants have been found to control property in which they have no legal interest by taking some overt action directed at the property to modify or improve it beyond simple upkeep." *Id.* at 497-98. In contrast, "California courts have declined to impose a duty to protect for tortious or criminal harm committed by third parties on property that defendants … did not actually own, possess, or control." *Id.* at 498. Indeed, even property owners may not owe such a duty when they lack

---

decision favors Plaintiff's position here, it is an unpublished order of a federal trial court that precedes the California Court of Appeal's contrary opinion discussed above. Although the federal decision cites *Melton*, 183 Cal. App. 4th 521, it does not address the "necessary component" doctrine articulated in that case. This Court, sitting in diversity jurisdiction and applying California law, follows the precedential opinions of the California Court of Appeal where no party has provided convincing evidence that the California Supreme Court would decide the matter otherwise. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007) ("[W]hen … there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state's intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.").

sufficient control of the property. *See Laico v. Chevron U.S.A., Inc.*, 123 Cal. App. 4th 649, 662-63 (Ct. App. 2004).

Here, the Complaint alleges in general terms that "[a]t all relevant times, Airbnb held itself out to the public and Plaintiff as managing, controlling, inspecting, and leasing out the Subject House and property as its rental property." Compl. ¶ 17. This allegation is conclusory, and is contradicted by other allegations in the Complaint and by statements in Plaintiff's briefing. For one, the Complaint makes clear that Airbnb is not holding out listed homes as being "its rental property," but rather serves as a platform for matching market participants. *See* Compl. ¶ 16 ("Airbnb is a company that provides an online platform offering properties for rent and brokering rentals between parties who wish to offer their properties for rent with parties who wish to rent the properties."); ECF No. 13 at 8 ("Airbnb acts as a broker between its members and hosts with properties to rent."). Plaintiff's brief describes the "control" Airbnb exercises over hosts' properties, not in terms of Airbnb's ability to "tak[e] some overt action directed at the property to modify or improve it beyond simple upkeep," *Colonial Van*, 76 Cal. App. 5th at 497-98, but in terms of "Airbnb ha[ving] the right to remove hosts and properties from its marketplace for failure to abide by Airbnb's policies." ECF No. 13 at 8; *see also id.* at 8-9 (alleging that in response to complaints Airbnb fails to notify law enforcement or to "diligently remove such properties from their platform"). In other words, Airbnb's "control" is not over the physical property as such, but rather over Airbnb's own website.

This is consistent with the applicable Terms, of which the Court takes judicial notice, which state at the outset that "[a]s the provider of the Airbnb Platform, Airbnb does not own, control, offer, or manage any Listings or Host Services." ECF No. 10-3, Terms, at 1. In a later section entitled "Independent of Hosts," the terms state that "Airbnb does not direct or control your Host Service," and that a host's "relationship with Airbnb is that of an independent individual or entity and not an employee, agent, joint venturer, or partner of Airbnb, except that Airbnb Payments acts as a payment collection agent as described in the Payments Terms." *Id.* § 4.3.

In its motion to dismiss, Airbnb points out that courts have indeed recognized Airbnb's lack of physical control over listed properties. *See Jackson v. Airbnb, Inc.*, 654 F. Supp. 3d 990, 995 (C.D. Cal. 2023) ("*Jackson II*") ("[Airbnb's Terms] are simply policies that allow Airbnb to regulate its platform; they d[o] not allow Airbnb to make physical changes to rental properties. . . . Airbnb can remove listings and revoke memberships, not … pave[] walkways and put[] up fences."); *Matthew-Ajayi v. Airbnb, Inc.*, No. ADC-23-3035, 2025 WL 487572, at *3 (D. Md. Feb. 13, 2025) ("[I]f a property listed on Airbnb's marketplace failed to abide by a specific policy, Airbnb's method of recourse would be to limit this owner's access to its marketplace, as opposed to carrying out changes to the property itself."). Plaintiff does not contest these factual assertions, and indeed relies on one such assertion. ECF No. 13 at 18 (quoting *Matthew-Ajayi* for the proposition cited above).

Consistent with the foregoing, decisions have held that a plaintiff failed to state a claim for negligence against Airbnb under the "special relationship" exception. *See Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1008 (C.D. Cal. 2022) ("*Jackson I*") ("The Complaint has not alleged sufficient facts to support that there was a special relationship—either between Airbnb and Decedent or between Airbnb and [the third party]. … [T]here are no allegations fleshing out Airbnb's 'operator/manager' role that would plausibly allege Airbnb exerted control over the subject property such that a special relationship exists.") (citation omitted); *Jackson II*, 654 F. Supp. 3d 990, 995 (C.D. Cal. 2023) ("No special relationship exists."). *See also Esposito v. Airbnb Action, LLC*, No. 5:20-CV-5204, 2022 WL 2980700, at *5 (W.D. Ark. July 27, 2022) ("Plaintiffs suggest that the Court view the relationship between Airbnb and Plaintiffs as that of innkeeper/guest or business owner/invitee. Neither duty fits the facts.") (applying Arkansas and California law). This Court reaches the same conclusion here. Plaintiff has not established that Airbnb exercised control over the Subject House—whether as a landlord, manager, or otherwise—giving rise to a special relationship with Plaintiff.

Plaintiff's first argument is that, even beyond the context of injury to customers on a business's premises, California law recognizes a "special relationship" between a business and its customers generally. *See* ECF No. 13 at 11. However, the cases cited by Plaintiff do not support this proposition. *See Marois v. Royal Investigations & Patrol, Inc.*, 162 Cal. App. 3d 193, 200 (Ct. App. 1984) (holding that businesses have the obligation to "protect[] customers while they are on the business premises"); *Morris v. De La Torre*, 36 Cal. 4th 260, 271-72 (2005) (stating that a restaurant has the duty to protect not only customers on its premises, but also its invitees, whether or not they intended to purchase food).[3]

The Court concludes that Plaintiff has not established a special relationship giving rise to a duty by Airbnb. Plaintiff's claims for negligence, negligent infliction of emotional distress, and premises liability are therefore subject to dismissal.

### C. Vicarious Liability

Plaintiff further argues that "as alternatives to the theories to hold Airbnb directly liable for Plaintiff's harm, Airbnb may be held *vicariously* liable for Plaintiff's harm under either [1] an agency theory, or [2] a joint venture theory." ECF No. 13 at 13. The Court addresses these theories next.

#### 1. Agency

Plaintiff contends that "Airbnb is vicariously liable for Hernandez's conduct as [Airbnb's] agent," under a theory of ostensible agency. ECF No. 13 at 13-14. Ostensible agency exists when "the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. Both Parties cite *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59

---

[3] Plaintiff also asserts that Airbnb had a special relationship with Hernandez, in that Hernandez acted as the agent for Airbnb. ECF No. 13 at 11, 12. But Plaintiff does not appear to develop this argument. To the extent that Plaintiff separately argues vicarious liability under a theory of ostensible agency, the Court addresses that argument below.

Cal. App. 4th 741, 747 (Ct. App. 1997), which describes three elements of ostensible agency as follows: "The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence." Liability of the principal for the acts of an ostensible agent is based on the doctrine of estoppel. *Id.*

Plaintiff contends that the first two elements are satisfied because:

> Airbnb brought legitimacy to Hernandez's property by authorizing Hernandez to host the property on Airbnb's platform. Plaintiff reasonably believed he would have privacy and be free from sexual harassment because Airbnb approved the property to be listed on its website and represented to Plaintiff and the public that the house met safety and security standards. Airbnb further represented that Airbnb conducted a background check and vetted Hernandez before allowing him to host his property on Airbnb's platform.

ECF No. 13 at 14 (citations omitted). Even as argued in Plaintiff's brief, the elements of ostensible agency are not met. The question is not whether Airbnb brought legitimacy to Hernandez's property by listing it on Airbnb's website, or whether Plaintiff reasonably believed he would have privacy if he rented the property—but rather (as framed by Plaintiff's theory of agency) whether Plaintiff reasonably believed based on some act of Airbnb that Hernandez was acting as an agent of Airbnb. Plaintiff has not offered any non-conclusory facts that would plausibly establish that proposition. Additionally, the judicially noticeable Terms expressly disclaim that a host is an "agent" of Airbnb. Terms § 4.3. The Complaint therefore fails to state a claim for vicarious liability against Airbnb based on a theory of ostensible agency.[4]

---

[4] Plaintiff preemptively contends, in the event Airbnb "argue[s] that it cannot be held liable when an agent acts beyond the scope of his authority," that such an argument by Airbnb would fail, ECF No. 13 at 15-16. In light of the determination that the Complaint fails to establish that Hernandez was Airbnb's ostensible agent, the Court declines to

### 2. *Joint Venture*

Plaintiff also contends that "Airbnb is vicariously liable for Hernandez's wrongful conduct because they were in a joint venture." ECF No. 13 at 17. *See Leming v. Oilfield Trucking Co.*, 44 Cal. 2d 343 (1955) ("The relationship of joint venturers is that of a mutual agency, akin to a limited partnership, and … the negligence of one joint venturer or of his employees acting in connection with the joint venture is imputed to the other joint venturers.") (citation and internal quotation marks omitted). "A joint venture . . . is an undertaking by two or more persons jointly to carry out a single business enterprise for profit." *Unhuh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 370 (Ct. App. 2008). The elements of a joint venture are: "the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise." *Id.*

Here, although Plaintiff alleges a joint venture in conclusory terms, he presents no factual allegations that would establish a joint venture. As discussed above, Airbnb's control over whether or not to list the Subject House does not amount to control over the Subject House or Hernandez's rental of that house—Airbnb merely controls whether that listing may use Airbnb's website. Although both Airbnb and Hernandez gain financially through a completed rental transaction, that does not amount to each having an ownership interest in a joint enterprise. Additionally, the Terms expressly disclaim that Airbnb is a "joint venturer" with its hosts. Terms § 4.3. The Complaint therefore fails to state a claim for vicarious liability against Airbnb based on a theory of joint venture.

### D. **Invasion of Privacy (Claim Two)**

The common law tort of invasion of privacy by intrusion has two elements: "First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a

---

address these arguments about whether Hernandez's acts were within the scope of an agent's authority.

manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

Airbnb argues that the Complaint fails to allege intentional conduct by Airbnb. ECF No. 10-1 at 9-10. Plaintiff disagrees on the law, asserting that a defendant can be held liable for invasion of privacy if the defendant "knowingly permits the use of hidden cameras in a private setting," ECF No. 13 at 19, citing the California Supreme Court's opinion in *Hernandez*. That case, however, recognized the requirement that the defendant's intrusion be "intentional." *Hernandez*, 47 Cal. 4th at 286. Plaintiff has not alleged intentional conduct by Airbnb here, and fails to state a claim against Airbnb for invasion of privacy.

### E. Intentional Infliction of Emotional Distress (Claim Three)

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations and internal quotation marks omitted). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050–51 (citation and internal quotation marks omitted). The defendant's conduct "must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Ess v. Eskaton Props., Inc.*, 97 Cal. App. 4th 120, 130 (Ct. App. 2002) (citation omitted). The defendant's conduct must also be "intended to inflict injury or engaged in with the realization that injury will result." *Hughes*, 46 Cal. 4th at 1051.

Airbnb argues that the Complaint fails to allege that Airbnb, as opposed to Hernandez, affirmatively engaged in extreme and outrageous conduct. ECF No. 10-1 at 10. Airbnb further argues that Airbnb's alleged "passive act of allowing the Property to remain listed on Airbnb's broader marketplace, and accessible to the broader public," does not amount to intentional conduct "directed at" Plaintiff. *Id.* Plaintiff does not appear to

respond to either argument, but instead argues that the placement of a camera in a private bathroom is outrageous and that Airbnb acted recklessly. ECF No. 13 at 20. Plaintiff has failed to allege conduct by Airbnb, as opposed to conduct by Hernandez, that meets the requirement of "extreme and outrageous conduct by the defendant," *Hughes*, 46 Cal. 4th at 1050, and fails to state a claim against Airbnb for intentional infliction of emotional distress.

### F.    Sexual Harassment (Claim Seven)

Plaintiff's Claim Seven alleges "sexual harassment" without identifying a common-law or statutory basis for the claim. Airbnb construes this claim as being premised on California Civil Code § 51.9. ECF No. 10-1 at 10-11. Plaintiff, in his opposition brief, agrees. ECF No. 13 at 20.

To state a claim under Section 51.9, a plaintiff must plead the following elements:

> (1) There is a business, service, or professional relationship between the plaintiff and defendant or the defendant holds himself or herself out as being able to help the plaintiff establish a business, service, or professional relationship with the defendant or a third party. Such a relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons:
>
> (A) Physician, psychotherapist, or dentist. For purposes of this section, "psychotherapist" has the same meaning as set forth in paragraph (1) of subdivision (c) of Section 728 of the Business and Professions Code.
>
> (B) Attorney, holder of a master's degree in social work, real estate agent, real estate appraiser, investor, accountant, banker, trust officer, financial planner loan officer, collection service, building contractor, or escrow loan officer.
>
> (C) Executor, trustee, or administrator.
>
> (D) Landlord or property manager.
>
> (E) Teacher.

    (F) Elected official.

    (G) Lobbyist.

    (H) Director or producer.

    (I) A relationship that is substantially similar to any of the above.

  (2) The defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe.

  (3) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the conduct described in paragraph (2).

California Civil Code § 51.9(a)(1)–(3).

  Airbnb argues that this claim fails because: (1) Plaintiff fails to allege any affirmative conduct by Airbnb as described in the second element of the statute; and (2) Plaintiff fails to allege a relationship between Airbnb and Plaintiff that is "substantially similar" to those listed in the first element of the statute. ECF No. 10-1 at 10-11. Plaintiff maintains that "Airbnb is liable for sexual harassment, both directly and indirectly through vicarious liability, agency, joint venture, and/or ratification," ECF No. 13 at 21, but otherwise does not appear to respond to Airbnb's first argument. The Court agrees with Airbnb that Plaintiff has failed to allege conduct by Airbnb as prohibited by the statute, and concludes that the Complaint fails to state a claim for sexual harassment under California Civil Code § 51.9.

### G. Leave to Amend

  Dismissal without leave to amend is proper if it is clear "that the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted). Airbnb's motion requests dismissal without leave to

amend. ECF No. 10-1 at 1, 6-7, 12. Plaintiff's opposition brief argues that his claims should not be dismissed, but does not request or address leave to amend. *See* ECF No. 13. Thus, Plaintiff does not give an indication of how, if at all, he could amend his Complaint to address the arguments made by Airbnb. Nor does Plaintiff's opposition brief argue facts that, if included in an amended pleading, would adequately address the deficiencies identified herein. As set forth above, Plaintiff has failed to respond to various arguments made by Airbnb in Airbnb's motion. The Court is unaware of additional facts that, if alleged, would address the deficiencies in the Complaint, and concludes based on the record presented that amendment would be futile. Accordingly, the Court grants the motion to dismiss as to Airbnb without granting leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Airbnb's motion to dismiss [ECF No. 10] is **GRANTED**. The claims against Airbnb are **DISMISSED** without leave to amend.

**IT IS SO ORDERED**.

Dated:  November 25, 2025

_____
Hon. Robert S. Huie
United States District Judge